## Borough of Carlisle, Plff. in Err., *v.* Carlisle Gas & Water Company.

The facts that a municipal corporation has at its own expense constructed apparatus, such as fire plugs, in its streets, for distribution and use of water for municipal purposes, such as extinguishment of fires; and

Cited in Spring Brook Water Co. v. Pittston, 203 Pa. 223, 52 Atl. 249, and Ephrata Water Co. v. Ephrata, 16 Pa. Super. Ct. 484, 489, 18 Lanc. L. Rev. 169.

NOTE.—In Spring Brook Water Co. v. Pittston, 203 Pa. 223, 52 Atl. 249, the same determination was made, the water company having reserved the

that it has been supplied with water for such purposes gratuitously, for many years, by a water company organized for the general purpose of supplying the city and its inhabitants,—do not preclude the water company from imposing reasonable rates or charges for continuing the supply of water to such fixtures or apparatus. So *held*, where a long-established rule of the water company reserved a right to change its rates.

(Decided May 17, 1886.)

Error to the Common Pleas of Cumberland County to review a judgment for defendant in an action of assumpsit. Affirmed.

The following is the opinion of the court below, delivered by HERMAN, P. J,:

The Carlisle Gas & Water Company was incorporated by an act of the general assembly passed April 19, 1853. Under the powers granted by its charter the company constructed a system of water works, by means of which it introduced water into the borough of Carlisle on the 1st of February, 1854. In the year 1854, prior to the month of November, the borough, at its own cost and expense, procured and put in, at convenient and practical points in its streets and alleys, a number of fire plugs, and connected them with the company's main pipes laid through the streets. These fire plugs were then put in for the purpose of being used in the extinguishment of fires, and have been used for that purpose by the fire companies, from the introduction of water into the borough down to the present time, whenever necessary; during all which time the borough has maintained and exercised a supervision over them as its own property.

The fire companies of the borough are four in number, con-

right to revoke the offer to furnish water gratuitously. So, a recovery may be had where there is nothing to show that either party supposed that it was to be given without compensation. Ephrata Water Co. v. Ephrata, 16 Pa. Super. Ct. 484, 18 Lanc. L. Rev. 169. And, if the contract has been to furnish water for a certain number of hydrants at a fixed sum, the borough will be required to pay for additional service rendered. Hyndman Water Co. v. Hyndman, 7 Pa. Super. Ct. 191, 42 W. N. C. 257. And the borough is liable for the water actually used, although it is less in quantity than the company had agreed to furnish. United States Waterworks Co. v. Du Bois, 176 Pa. 439, 35 Atl. 251.

sisting of one hook and ladder company, and three steam-engine and hose companies. They are all what are commonly called independent or volunteer companies. They are regularly incorporated, and receive donations, from time to time, from the borough and citizens, towards defraying the cost and expense of procuring and maintaining the apparatus and property; but receive no pay for their services. The borough has no paid fire department.

In pursuance of the provisions of its charter the gas and water company adopted, on the 30th of December, 1854, a series of rules regulating the use of the water. .These rules are designated, "Rules by which the use of the water shall be governed;" and the 8th article thereof provided that "water for the fire plugs will be supplied gratuitously, to be used only in case of fire, and at no other time or under any other circumstances without special authority from the company."

By the 13th article "the company reserves the right to change the rates for the use of water from year to year, or to restrict the supply generally or specially, as in their judgment may be found necessary."

Under these rules water was supplied gratuitously for the fire plugs, from the time of the introduction of the water into the borough until the 25th of August, 1881, when the company adopted the following resolution: "Resolved, that the 8th article of the rules by which the use of water shall be governed be rescinded and annulled, and that from and after the 1st of October next, the borough of Carlisle shall be charged at the rate of $5 for each fire plug, to be paid semiannually as other water rates are paid; and that if said borough neglects or refuses to pay said charges the same shall be deducted, from time to time, from any dividends that may be declared payable on the capital stock of the company held and owned by the borough," and at the same time ordered that a copy of the resolution, rescinding the 8th article of the rules, etc., and making a charge for the use of fire plugs and the collection of such charges, be served on the town council.

Notice of this resolution and action of the company was accordingly given to the town council on the 1st of February,

1882, at which time there were in all 61 fire plugs, which had been put in by the borough. Thereupon the company charged and demanded from the borough for the half year beginning with April 1, 1882, and ending with September 30, 1882, the sum of $152.50 for the use of water for its 61 fire plugs, being $2.50 for each fire plug, at the rate of $5 per annum.

Water is taken from the fire plugs whenever necessary for the extinguishment of fires; but between April 1, 1882, and the period for which the rates in controversy are demanded, only one fire occurred which necessitated the use of the fire plugs. There is no evidence of any contract having been entered into between the company and the borough in reference to the putting in of fire plugs. The company provides no service pipes for any of its customers; it simply introduces the water into its main pipes laid in the streets and alleys of the borough, to which persons intending to use the water attach their service pipes, which they supply and put in at their own expense.

The borough is the holder and owner of 1,124 shares of the capital stock of the defendant company, of the par value of $28,100, being $25 a share; and on this a dividend of 6 per cent was declared May 9, 1882, payable May 20, 1882, amounting to $1,686. From this dividend, the company claims the right to deduct and retain $152.50 to pay the water charges for the 61 fire plugs, for the half year ending September 30, 1882, as fixed and determined by the resolution of the 25th of August, 1881, payment thereof being refused by the borough, and excepting which amount the whole of this dividend was settled for and paid to the borough when and as demanded; so that the only part of the dividend declared May 9, 1882, remaining unpaid, is the sum of $152.50, to recover which the borough brings this suit.

On the part of the borough it is contended that the action of the gas and water company of the 25th of August, 1881, was illegal and void; and that it has no authority to charge or collect from the borough anything for the use of water supplied for the fire plugs, and claiming that the company has no right to retain out of the dividend declared any part of the charge of

$152.50. The borough sues to recover this amount from the company.

The whole question is whether the company had the right to rescind and annul the 8th article of its rules governing the use of the water, and to fix and determine a rate or price to be paid by the borough for its fire plugs.

There can be no doubt that originally the company had the power to fix and determine equitably the rate or price for the use of water for the fire plugs. There is nothing in its charter requiring water for the extinguishment of fires to be supplied gratuitously, and there is no evidence of any contract binding the company to do so.

The mere fact that under its rules it supplied the water for this purpose gratuitously from December 30, 1854, down to April 1, 1882, does not bind the company to continue to so supply it forever, nor estop it from so altering its rules as to require the payment of a fair and fixed rate for such use. It cannot be said that the borough thereby acquired a prescriptive right to its gratuitous use. The water was used through all those years under a license from the company so to use it, and the license was not irrevocable. Indeed, the company expressly reserved the right to change the rates for the use of water from year to year, or to restrict the supply generally or especially as in its judgment might be found necessary. I think it is clear that the right to fix a fair and reasonable rate or price to be paid for the use of water for the fire plugs was never forfeited or lost by the company; and having the right to fix such rate or price, the borough is rightly and properly charged therewith.

The fire plugs were put in by the borough so that the water might be used, under its direction, for the extinguishment of fires; and this was done for the benefit of all the citizens of the borough as a means for the protection and security of their property from fire.

It was never intended that the water should be paid for by the fire companies, nor by the unfortunate citizens whose property was specially sought to be saved or protected. The borough is the owner of the fire plugs; it keeps them in repair, and by ordinance regulates their use; and it is eminently right and proper

that it should do all this.    I cannot but think that the borough
is rightly chargeable with the rates fixed for the use of the
water, and not the fire companies or the unfortunate citizen or
citizens for the special protection of whose property the water
may be used.

It can never be said that the rate fixed is inequitable or unrea-
sonable, merely because of the fact that but one fire occurred dur-
ing the half year for which the charge in controversy was made.
It is impossible to foretell how many fires will occur in a given
time, or how much water will be actually needed for the pur-
pose.    The water company, when it undertakes for a fixed rate
or price to supply water for the extinguishment of fires, is bound
to see to it that a sufficient supply is always on hand to meet
the emergency when it occurs.    In view of the duty thus made
incumbent upon them, I cannot say that the rate of price fixed
by the resolution of the 26th of August, 1881, is inequitable.
The borough had ample notice of this new regulation, and, hav-
ing permitted a continuance of the use of its fire plugs, it is lia-
ble to pay the rates fixed, and the company may retain the
amount charged out of the dividend declared.

The power of the company in the fixing of its rates is by no
means unlimited.    It could not, for instance, fix them so high
or in such a manner as to practically prohibit the use of the
water.    They must be equitable, uniform, and fixed.    The
charter requires this, and, were the company to exceed its powers
in this respect, I have no doubt it would be subject to the re-
straining power of the courts.

The company having settled with and paid over to the
borough all of the dividend declared on the 9th of May, 1882,
on its capital stock held and owned by the borough, excepting
the sum of $152.50, which is retained to meet the charges for
water for the fire plugs for the half year ending with September
30, 1882, for which the borough is liable, the decision of the
court should be given for the defendant.

Exceptions were filed to this opinion and were dismissed by
the court, and the plaintiff brought error.

*Hepburn, Jr., & Stuart* for plaintiff in error.

*Lemuel Todd* and *Henderson & Hays* for defendant in error.

PER CURIAM:

Under the facts found, this judgment is correct. The fire plugs were not put in under any contract which precluded the company from imposing reasonable charges for the use of the water. The fact that the borough was permitted to use it gratuitously for several years did not make such permission ir revocable. The right to change the rates was expressly reserved by rule 13 of the company. The borough had knowledge of that right. It is a large stockholder in the company and is entitled to appoint one third of the managers thereof. This right it exercises annually. It was duly notified of the changes and of the annual rates imposed on it. The rate is not unreasonable. The borough has not abandoned the fire plugs, nor has it discontinued the use of the water by the fire companies whenever necessary. We concur in the conclusion of the court.

Judgment affirmed.